# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **RIALTO-CAPITOL CONDOMINIUM ASSOCIATION, INC.,** | **Civil Action No. 19-12811 (KM)** |
| **Plaintiff,** | **OPINION AND ORDER** |
| **v.** |  |
| **BURLINGTON INSURANCE COMPANY, et al.,** |  |
| **Defendants.** |  |

**CLARK, Magistrate Judge**

    **THIS MATTER** comes before the Court on two motions related to a subpoena served by Plaintiff Rialto-Capitol Condominium Association, Inc. ("Rialto" or "Plaintiff") on non-parties Robert D. Brown, Esq. and Stahl and DeLaurentis, P.C. (collectively "Stahl") on March 31, 2021 (the "Subpoena"): (1) a motion by Stahl to quash the Subpoena pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii) [Dkt. No. 38]; and (2) a cross-motion by Plaintiff to compel Stahl's compliance with the Subpoena [Dkt. No. 40].[1] Defendant Scottsdale Insurance Company ("Scottsdale") has joined in Plaintiff's motion to compel [Dkt. No. 49]. For the reasons set forth

---

[1] The briefing submitted in connection with the presently pending motions is irregular and fails to comply with Local Civil Rule 7.1. Pursuant to Local Civil Rule 7.1(h), "[a] party filing a cross-motion shall serve and file a combined brief in opposition to the original motion and in support of the cross-motion. . . ." In response to Stahl's motion to quash, Plaintiff submitted an opposition brief [Dkt. No. 39] and a separate brief in support of its cross-motion to compel [Dkt. No. 40]. Plaintiff's opposition brief [Dkt. No. 39] and Plaintiff's brief in support of its cross-motion [Dkt. No. 40] appear to be largely identical, except that Plaintiff's brief in support of its cross-motion contains additional supporting exhibits. Accordingly, the Court will consider Plaintiff's brief in support of its cross-motion [Dkt. No. 40] to be Plaintiff's operative submission in connection with the pending motion. In response to Plaintiff's submission, Stahl submitted a brief in opposition to Plaintiff's cross-motion [Dkt. No. 42] and a reply brief in support of its motion to quash [Dkt. No. 43]. Because Stahl's briefs appear to be identical, the Court will consider Stahl's brief in opposition to Plaintiff's cross-motion [Dkt. No. 42] to be Stahl's operative submission in response to Plaintiff's cross-motion.

below: (1) Stahl's motion to quash [Dkt. No. 38] is **GRANTED** and Plaintiff's motion to compel [Dkt. No. 40] is **DENIED**.

## I.      BACKGROUND

This matter arises from alleged defects in the construction of the Rialto-Capitol Condominium (the "Condominium") in Jersey City, New Jersey. The Condominium is part of a commercial development project known as "The Beacon" which occupies the former campus of the Jersey City Medical Center. The Jersey City Medical Center campus, which included several historical "brick-clad buildings in the art-deco style," was purchased in 2005 by Baldwin Asset Associates Urban Renewal Company, LLC, the developer of The Beacon. Dkt. No. 1-3, Compl. at ¶¶4-5. Plaintiff administers, manages and operates "the common elements and the common affairs" of the Condominium. *Id.* at ¶9. After receiving control of the Condominium from the developer, Plaintiff retained an engineering firm, Berman & Wright, to investigate the condition of the exterior facades of the buildings. According to Plaintiff, as a result of such investigations, Plaintiff became aware of "extensive" deficiencies in the design and construction of the buildings caused by the developer and its contractors, including defects in the repair and rehabilitation of the exterior brick facades of the buildings which have resulted in significant water damage. *Id.* at ¶¶10-11. Plaintiff claims damages of approximately $113,000,000.00 resulting from the alleged defects. *Id.* at ¶12.

In October 2013, Plaintiff filed an action against the developer and additional parties which Plaintiff claims were responsible for the alleged construction deficiencies (the "Construction Action").[2] *Id.* at ¶13. CCC Renovation, Inc. ("CCC Renovation"), a façade contractor hired to perform repair and rehabilitation work to the exterior brick facades of the Condominium buildings,

---

[2] Plaintiff does not provide any further details regarding the Construction Action.

was named as a defendant in the Construction Action. *Id.* at ¶¶13-14. According to Plaintiff, during the relevant time period, CCC Renovation was insured by Burlington Insurance Company as its primary insurer and by Scottsdale as its excess insurer (collectively "Defendants"). ¶¶17-18. Despite the alleged insurance coverage and proper notice of the Construction Action, Plaintiff claims that both Burlington and Scottsdale refused to defend or indemnify CCC Renovation. *Id.* at ¶19.

Shortly before the scheduled trial in the Construction Action, Plaintiff and CCC Renovation reached a settlement (the "Settlement") whereby Plaintiff agreed to dismiss its claims against CCC Renovation in exchange for a monetary payment and the entry of a consent judgment against CCC Renovation in the amount of $5,000,000.00 (the "Consent Judgment") "for the purpose of pursuing the insurance proceeds" from Burlington and Scottsdale. *Id.* at ¶27. Additionally, CCC Renovation agreed to assign to Plaintiff all of its rights to the proceeds of the insurance policies issued by Burlington and Scottsdale and any claims CCC Renovation had against Burlington and Scottsdale arising from those policies. *Id.* at ¶¶29-30.

On April 23, 2019, Plaintiff filed its Complaint against Defendants in the Superior Court of New Jersey, Hudson County, Law Division. Plaintiff's Complaint seeks a declaration that CCC is entitled to coverage under the applicable insurance policies issued by Defendants and that Defendants are now liable to Plaintiff for the amount of the Consent Judgment. Plaintiff's Complaint also states claims against Defendants for breach of contract and breach of the covenant of good faith and fair dealing. On May 22, 2019, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441, asserting diversity jurisdiction under 28 U.S.C. § 1332.

The parties' present dispute relates to the execution of the Settlement between Plaintiff and CCC.  On January 28, 2021, the owner and president of CCC, Robinson Agudelo, who was

represented by Mr. Brown in the Construction Action, was deposed in connection with this matter. According to Plaintiff, during his deposition Mr. Agudelo "made several statements that contradict the statements made in the [C]onsent [O]rder he signed" and suggested that Mr. Brown did not explain the Consent Judgment to him. Dkt. No. 40-2, Certification of John Randy Sawyer, Esq. at ¶ 8-9. Specifically, Plaintiff claims that Mr. Agudelo testified that he either did not sign the Consent Judgment or did not recall doing so and stated his belief that the Consent Judgement may not have been "fair." *Id.* at ¶ 10. Because Mr. Agudelo's testimony "undermined the Consent Judgement . . . and contradicted the terms of the settlement that he himself signed," Plaintiff contacted Mr. Brown and requested that he produce "documents related to [Mr. Brown's] communications with Mr. Agudelo regarding the Consent Judgment. *Id.* at ¶ 11. In response, Mr. Brown stated that he "will not/cannot voluntarily turn over [the requested] information." Sawyer Cert. at Ex. D.

Thereafter, Plaintiff served Stahl with the Subpoena which seeks the production of "[a]ll written and electronic communications between [Stahl] and [Mr. Agudelo] or any other representatives of [CCC] related in way [sic] to the [S]ettlement between CCC and [Plaintiff in the Construction Action]." Dkt. No. 38 at Ex. A. Stahl timely moved to quash the Subpoena pursuant to Rule 45(d)(3) because it seeks the production of information protected from disclosure by the attorney-client privilege. *See* Dkt. No. 38. In response, Plaintiff filed a cross-motion to compel Stahl's compliance with the Subpoena claiming that Mr. Agudelo waived the attorney-client privilege with respect to the requested communications. *See* Dkt. No. 40. Scottsdale filed a brief joining in Plaintiff's motion to compel.[3] *See* Dkt. No. 49.

---

[3] In addition to joining in Plaintiff's motion to compel Stahl's compliance with the Subpoena, Scottsdale advises that it served its own subpoena on Stahl (the "Scottsdale Subpoena"). According to Scottsdale, the "monetary payment" to Plaintiff included as part of the Settlement between Plaintiff and CCC was in the amount of $1,000,000.00 and was paid by CCC's "insurance carriers, XL Specialty Insurance/Indian Harbor Ins. Co. and Rutgers Casualty Insurance

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation and

provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant
> to any party's claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information, the parties'
> resources, the importance of the discovery in resolving the issues, and whether
> the burden or expense of the proposed discovery outweighs its likely benefit.
> Information within this scope of discovery need not be admissible in evidence
> to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26 is to be construed liberally in favor of disclosure, as relevance is

a broader inquiry at the discovery stage than at the trial stage. *Tele–Radio Sys. Ltd. v. De Forest*

*Elecs., Inc.,* 92 F.R.D. 371, 375 (D.N.J. 1981). While relevant information need not be admissible

at trial in order to grant disclosure, the burden remains on the party seeking discovery to "show

that the information sought is relevant to the subject matter of the action and may lead to admissible

evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).  Upon a finding of good

cause, a court may order discovery of any matter relevant to a party's claims, defenses or the

subject matter involved in the action. "Although the scope of discovery under the Federal Rules is

unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v.*

*Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999).

---

Company/American European Insurance Company." Dkt. No. 49 at p. 2. The Scottsdale Subpoena seeks the
production of all written communications between Stahl and "Rutgers Insurance Company and Indian Harbor
Insurance Company," Stahl and Mr. Agudelo or CCC, and Stahl and any other liability carriers for CCC in connection
with the Construction Action. Dkt. No. 49 at p. 3-4. Scottsdale's brief in support of Plaintiff's motion to compel Stahl's
compliance with the Subpoena is primarily focused on Scottsdale's arguments in support of the Scottsdale Subpoena.
However, because no motion related to the Scottsdale Subpoena has been filed with the Court, the Court makes no
ruling regarding the enforcement of the Scottsdale Subpoena or the propriety of the information it seeks. To the extent
that Scottsdale has included arguments related to the Subpoena, the Court has considered those arguments in ruling
on the present motions.

Discovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b). *OMS Investments, Inc. v. Lebanon Seaboard Corp.,* 2008 WL 4952445 (D.N.J. Nov. 18, 2008). In addition, pursuant to Rule 45(d)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and the Court has a responsibility to enforce this duty. However, it is the party claiming undue burden that must establish same. *Nye v. Ingersoll Rand Company,* Civ. No. 08–3481(DRD), 2011 U.S. Dist. LEXIS 7383, at *6, 2011 WL 253957 (D.N.J. Jan. 25, 2011); *OMS Investments,* 2008 WL 4952445, at *2. If a subpoena falls outside the scope of permissible discovery, the Court has authority to quash or modify it upon a timely motion by the party served. Fed. R. Civ. P. 45(d)(3).

Specifically, four circumstances exist which require the Court to quash or modify a subpoena. Rule 45(d)(3)(A) provides that:

> (A) On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> > (i) fails to allow reasonable time to comply;
> >
> > (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> >
> > (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> >
> > (iv) subjects a person to undue burden.

*Id.* In contrast, a court *may* quash or modify a subpoena where it requires "disclosing a trade secret or other confidential research, development, or commercial information." Rule 45(d)(3)(B)(i). The burden of the party opposing the subpoena "is particularly heavy to support a motion to quash as contrasted to some more limited protection such as a protective order. *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. May 15, 2014). (internal quotation marks omitted);

*see also Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, at *5 (E.D. Pa. July 30, 2012) (moving party bears a "heavy burden" of demonstrating that an enumerated need for quashing the subpoena exists).

## III.  DISCUSSION

Where, as here, a case is premised on federal diversity jurisdiction, courts are to decide issues of privilege based on state law.  *See In re Ford Motor Corp.*, 110 F.3d 954, 965-66 (3d Cir. 1997). Thus, the Court considers the attorney-client privilege under New Jersey law. The attorney-client privilege exists to promote full and frank discussions between attorneys and their clients, *see United Jersey Bank v. Wolosoff*, 196 N.J. Super. 553, 561 (App. Div. 1984), and protects confidential communications made in the course of a professional relationship. *See* N.J.S.A. 2A:84A-20; *Rivard v. Am. Home Prod., Inc.*, 391 N.J. Super. 129, 153 (App. Div. 2007).  There is no dispute among the parties that the Subpoena seeks privileged information. Rather, Plaintiff claims that any privilege in the information sought has been waived by Mr. Agudelo's testimony.

Unlike the federal privilege, the New Jersey state attorney-client privilege is qualified and may be required to yield when the party seeking to pierce the privilege establishes: (1) there is a legitimate need to reach the evidence sought to be shielded, (2) there is a showing of relevance and materiality of that evidence to the issue before the court, and (3) the party seeking to bar assertion of the privilege has shown by a fair preponderance of the evidence, including all reasonable inferences, that the information cannot be secured from any less intrusive means. *Leonen v. Johns-Manville*, 135 F.R.D. 94, 100 (D.N.J. 1990) (citing *In re Kozlov,* 79 N.J. 232, 243–44 (1979)).

"[T]he *Kozlov* test has not been applied as broadly as its own language suggests" and "[t]hose courts applying *Koslov* have recognized, despite the plain language of the test, that merely

needing relevant and material information not available from other sources is insufficient standing alone to warrant the disclosure of otherwise privileged matters." *Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*, No. 12-4934 (NLH/JS), 2015 WL 9480014, at *2 (D.N.J. Dec. 29, 2015). Given the importance of the attorney-client privilege, privileged information should not necessarily be produced merely because it is relevant. *Id.* "Instead, the circumstances must be so grave or compelling that the privilege must yield to the most fundamental values of our justice system." *Id.* (citations omitted).

As an initial matter, the Court notes that the briefing submitted in connection with the present motions is perfunctory and largely devoid of legal arguments or factual background related to the parties' present dispute.[4] The limited briefing submitted by Stahl is arguably justified by Stahl's limited initial burden under Rule 45(d)(3)(A)(iii) which requires the Court to quash a subpoena seeking the disclosure of privileged information, which the Subpoena undisputedly does. Plaintiff's brief, however, which spans barely three pages, is problematic in light of the heavy burden carried by Plaintiff to establish a waiver of privilege as to any and all communications between Stahl and Mr. Agudelo in connection with the Construction Action.

Accordingly, the Court will now turn to the question of whether Plaintiff has met its burden to establish a waiver of privilege as to the information sought by the Subpoena. Plaintiff does not distinguish between the first and second prongs of the privilege waiver analysis and the Court will therefore address them together. Under the first and second prongs, the Court determines whether Plaintiff has demonstrated a legitimate need for the privileged information sought and whether such information is relevant and material to the issues before this Court. Plaintiff's argument in

---

[4] The brief submitted by Scottsdale in support of Plaintiff's motion to compel contains far more factual background and legal analysis than the briefs submitted by Plaintiff and Stahl. *See* Dkt. No. 49. Unfortunately, Scottsdale's brief is largely dedicated to Scottsdale's arguments regarding the enforceability of the Scottsdale Subpoena, an issue that is not presently before the Court.

this respect is two-fold. First, Plaintiff claims that the privileged communications are necessary to prove that the Settlement was "reasonable" under New Jersey law. Secondly, Plaintiff argues that when Mr. Agudelo "contradict[ed] a document that he himself acknowledges signing," he waived the attorney-client privilege protecting the communications between himself and Stahl by placing "communications wherein his attorneys clearly explained to him what he was signing" at issue. Dkt. No. 40-1 at p. 3.

The Court will first address Plaintiff's argument that the communications at issue are necessary to prove that the settlement was "reasonable" under New Jersey law. Under New Jersey law, it is "well-settled that where an insurer wrongfully refuses coverage and fails to defend its insured and the insured is later held to be covered, 'the insurer is liable for the amount of the judgment obtained against the insured or of the settlement made by him.'" *Fox Dev. Co. v. Praetorian Ins. Co.*, No. A-0386-13T2, 2015 WL 1879989, at *6 (N.J. Super. Ct. App. Div. Apr. 27, 2015) (quoting *Griggs v. Bertram*, 88 N.J. 347, 364, 443 A.2d 163 (1982)). A settlement between the insured and a third party is enforced against the insurer to the extent that "it is reasonable in amount and entered into in good faith." *Griggs*, 88 N.J. at 368, 443 A.2d 163. *Id.* at 367, 443 A.2d 163.

In determining whether a settlement was reasonable and made in good faith, the insured bears the initial burden of producing "the basic facts relating to the settlement" which demonstrate "the operative evidential facts as to its reasonableness and good faith . . ." *Id.* at 367, 443 A.2d 163. The insured must show the settlement "by the initial production of proof to be prima facie reasonable in amount and untainted by bad faith . . . ." *Id.* at 367, 443 A.2d 163. Once an insured has produced the relevant details of the settlement, the burden shifts to the insurer, who is "required to sustain the ultimate and major burden of demonstrating, by a preponderance of the evidence,

that it is not liable because the settlement is neither reasonable nor reached in good faith." *Griggs,* 88 N.J. at 367, 443 A.2d 163.

The question of whether a settlement is reasonable "requires consideration of available factual information, an understanding of the applicable law, and knowledge of jury verdicts in the forum in which the action is to be tried." *Pasha v. Rosemount Mem'l Park, Inc.*, 344 N.J. Super. 350, 359, 781 A.2d 1119, 1124 (App. Div. 2001). "Although testimony by industry experts is preferable to establish the reasonableness of a settlement, courts can still make such a determination with a description of the factors [taken] into consideration in the settlement of the case or the factors that ordinarily come to play in the settlement of a generic case of this kind." *Fox Dev. Co. v. Praetorian Ins. Co.*, No. A-0386-13T2, 2015 WL 1879989, at *7 (N.J. Super. Ct. App. Div. Apr. 27, 2015) (citing *Pasha*, 344 N.J.Super. at 357–59, 781 A.2d 1119) (internal quotations omitted)).

Plaintiff provides little explanation of its contention that the privileged communications it seeks are necessary to determine whether the Settlement was reasonable under New Jersey law. In support of its assertion, Plaintiff claims only that Mr. Agudelo's testimony has "clearly made his communications with his attorneys leading up to the execution of the Consent Judgment highly relevant and material to the enforceability of the Consent Judgment" and "will be used by the [d]efendants to argue that the Consent Judgment is not reasonable and may have been collusive." Dkt. No. 40-1 at p. 2-3. While Scottsdale does indeed contend that the Settlement is "facially unreasonable," Scottsdale's arguments are not grounded in the alleged inconsistencies in Mr. Agudelo's testimony regarding his views as to the reasonableness of the Settlement and recollection of his participation therein, but instead relate primarily to the objective reasonableness

of the amounts paid under the Settlement by CCC's other insurers in light the policy limits and the alleged damages attributable to CCC's actions.

Plaintiff's and Scottsdale's conclusory assertions that "any communications wherein [Mr. Agudelo's] attorney clearly explained to him what he was signing" are "highly relevant and material to any challenge to the Consent Judgment" and must therefore be produced are simply inadequate to meet their burden in establishing a waiver of the privilege protecting any such communications from disclosure. *Id.* at p. 3. While Plaintiff and Scottsdale will both be subject to varying burdens of proof regarding the reasonableness of the Settlement under *Griggs*, neither has articulated how the privileged communications between Stahl and Mr. Agudelo are essential, rather than simply relevant, to a determination of the reasonableness of the Settlement. In the absence of any such articulation, the Court cannot find that a wholesale production of privileged communications between Mr. Agudelo and Stahl is necessary and material to a determination of the reasonableness of the Settlement under *Griggs*.

The Court now turns to Plaintiff's assertion that Mr. Agudelo, through his testimony, placed his communications with Stahl at issue in this litigation. "[A] privilege may be waived "implicitly" where a party puts a confidential communication "in issue" in a litigation. *State v. Mauti*, 208 N.J. 519, 532 (2012) (citing *Kinsella v. Kinsella,* 150 N.J. 276, 300 (1997)). This waiver occurs in circumstances where "the party who places a confidential communication in issue voluntarily creates the 'need' for disclosure of those confidences to the adversary." *Mauti*, 208 N.J. at 532. For example, "a plaintiff in a medical malpractice action cannot claim that her medical records are privileged" and "where a party to a real estate transaction alleges misrepresentations during negotiations, she cannot claim attorney-client privilege in respect of her attorney's participation in those negotiations." *Id.* (citations omitted).

Plaintiff claims that Mr. Agudelo placed the relevant privileged communications at issue "by contradicting a document that he himself acknowledges signing." Dkt. No. 40-1 at p. 3. Based on Mr. Agudelo's alleged contradiction, Plaintiff argues that the "communications between [Mr.] Agudelo and his counsel are now needed to show that Mr. Agudelo was, in fact, given a full explanation of the import of the Consent Judgment he was signing." *Id.* Although Mr. Agudelo's testimony does demonstrate some inconsistencies in his recollection of the events surrounding the Construction Action, the execution of the Settlement and the entry of the Consent Judgement, Mr. Agudelo testified that he does not dispute signing the Consent Judgment and recalls that it was signed in his office. Sawyer Cert, Ex. at 87:13-25. Mr. Agudelo additionally testified that he did consult with his counsel prior to signing the Consent Judgement and that he does not believe the Consent Judgment was unfair. *Id.* at 101:23-25; 103:1-10. Despite Plaintiff's and Scottsdale's characterization of Mr. Agudelo's testimony, it appears to the Court that the inconsistencies in Mr. Agudelo's testimony result from the passage of time between the Construction Action and Mr. Agudelo's deposition in this matter. In the absence of any detailed argument by Plaintiff which would support a finding of a waiver, the Court finds Plaintiff has failed to establish that Mr. Agudelo's testimony amounts to a waiver of privilege as to the requested communications.

Although the Court finds that Plaintiff has failed to meet the first and second prongs, even if Plaintiff had demonstrated that the information sought was necessary and material, Plaintiff would still fail to meet the third prong which requires Plaintiff to establish that the privileged information it seeks cannot be obtained from any less intrusive source. A showing may be made under the third prong, for example, where "a significant witness or employee had passed away before discovery could be taken from that person, in which case the interview report of a deceased employee would qualify as being substantially needed and not obtainable by a less intrusive

source." *NL Indus., Inc. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 233 (D.N.J. 1992) (citing *HM Holdings v. Lumbermens Mut. Cas. Co.,* 259 N.J. Super. 308 (N.J. App. Div. 1992)) (internal quotations omitted).

Plaintiff contends that it cannot obtain the necessary information from any less intrusive means because "[Stahl] has taken the position that, despite [Mr.] Agudelo's clear waiver of the attorney-client privilege by virtue of his statements, they will not disclose the relevant communications without an order of the Court." Dkt. No. 40-1 at p. 3. Thus, Plaintiff claims, "this motion is the only means available to Plaintiff to obtain the needed discovery." *Id.* Plaintiff has fallen fall short of the necessary showing that by a fair preponderance of the evidence, including all reasonable inferences, the information cannot be secured from any less intrusive means. *In re Kozlov,* 79 N.J. 232, 243–44 (1979). It does not appear that Plaintiff or Scottsdale have made any attempts to gather evidence related to the events surrounding the negotiation and execution of the Settlement from non-privileged sources. In the absence of any such attempts, and in light of the availability of multiple alternative and non-privileged sources for the information at issue, the Court cannot agree that a wholesale production of privileged communications is the least intrusive means by which the parties can procure the necessary information.

In light of the foregoing, the Court finds that the Subpoena seeks information protected from disclosure by the attorney-client privilege and that neither Plaintiff nor Scottsdale have met their burden to establish a waiver of that privilege. Accordingly, Stahl's motion to quash [Dkt. No. 38] is **GRANTED** pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii) and Plaintiff's cross-motion to compel Stahl's compliance with the Subpoena [Dkt. No. 40] is **DENIED**.

## IV.    CONCLUSION AND ORDER

In light of the foregoing, and the Court having considered this matter pursuant to Federal Rule of Civil Procedure 78;

**IT IS** on this 23rd day of November, 2021,

**ORDERED** that Stahl's motion to quash the Subpoena [Dkt. No. 38] is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion to compel Stahl's compliance with the Subpoena [Dkt. No. 40] is **DENIED**.

   s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**